UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

DONOVAN NEWTON                          CIVIL ACTION NO. 21-cv-389

VERSUS                                  JUDGE ELIZABETH E. FOOTE

CARTER CREDIT UNION                     MAGISTRATE JUDGE HORNSBY

**REPORT AND RECOMMENDATION**

**Introduction**

Donovan Newton ("Plaintiff") filed suit in Shreveport City Court against Carter Federal Credit Union based on a dispute related to Plaintiff's checking account. Carter removed the case based on federal question jurisdiction, asserting that Plaintiff's claims arise under the Fair Credit Reporting Act ("FCRA") and Electronic Funds Transfer Act ("EFTA"). Before the court is Plaintiff's Motion to Remand (Doc. 4) on the grounds that his claims arise solely under state law and are not completely preempted by federal law. For the reasons that follow, it is recommended that the motion to remand be granted.

**Relevant Facts**

Plaintiff alleged in his city court suit that he had a checking account with Carter Federal Credit Union. The account maintained a positive balance, and Plaintiff deposited an additional $2,299 into the account. He later attempted to cash a small check, but Carter told him that his checking account was overdrawn. Plaintiff disputed that status, and a branch manager told him that the overdrawn status arose over a year prior and was because

of fraud-related charges assessed against the account. Plaintiff claimed that he was given no notice of that status. Petition, ¶¶ 1-9.

Plaintiff alleged that he explained to the Carter branch manager that the offset claimed by the credit union was not his fault, and he demanded that the funds be replaced in his account. Carter refused to return the funds and closed the account. Plaintiff alleges that Carter also threatened to take and took other adverse action against him. Plaintiff asserted that Carter is liable to him for damages and other relief for breach of contract, negligence, illegal offset, misrepresentation, conversion, and theft. He prayed for damages, attorney's fees, and injunctive and declaratory relief that would order a complete accounting, order Carter to cease listing the fraud-related charge, cease reporting negative information to third-party agencies concerning the account, and the like. ¶¶ 10-19. The petition does not reference any federal law by citation or name.

Carter filed a notice of removal and asserted that Plaintiff seeks to challenge the reversal of reportedly fraudulent Automated Clearing House ("ACH") transfers, which presents a dispute under the EFTA, 15 U.S.C. §§ 1693 et seq. Carter also asserted that Plaintiff seeks relief against Carter as a furnisher of credit reporting information that is available solely pursuant to the FCRA.

After Plaintiff filed his motion to remand, Carter submitted a declaration from Angelique Coats, Vice President of Risk Management for the credit union. Doc. 11-1. She offers Carter's version of the facts related to the dispute. Ms. Coates stated that Plaintiff set up three external ACH transfers through his online banking profile in October 2019. Funds totaling $5,897.99 were debited from a Citibank account and placed in Plaintiff's

checking account via the transfers. Within days, Plaintiff made three cash withdrawals totaling $5,300, and the remaining funds were used through a series of small debit card transactions. Plaintiff brought his balance to zero by November 5, 2019, but his account remained open based on his savings account that had the required minimum balance.

Several months later, in June 2020, Carter received a fax from Citibank that said the three ACH transfers were claimed to be unauthorized. In August 2020, Plaintiff resumed using his checking account by making a deposit and using his debit card. Citibank soon renewed its request that the three ACH transfers be returned, based on claims that the Citibank customer advised that they were unauthorized. Carter returned the funds to Citibank, which resulted in a negative balance in Plaintiff's checking account. Carter transferred available funds from Plaintiff's other accounts to the checking account, which reduced the negative balance to a little more than $3,500. Carter issued a letter to Plaintiff advising of the claim of ACH fraud and notifying him that his membership account would be closed.

The day after the letter issued, Plaintiff wanted to deposit funds in his Carter account, but he was prevented from doing so by the alerts on his account. Plaintiff spoke with Ms. Coats and claimed that he did not know why the deposits had been returned, but he offered no explanation for the situation. A resolution was reached whereby Plaintiff could continue cashing checks at Carter in exchange for a payment plan to address his negative balance. That agreement was ultimately not successful in resolving the dispute, and Plaintiff filed his suit in city court.

**Well-Pleaded Complaint Rule**

Under the well-pleaded complaint rule, a federal court has original or removal jurisdiction only if a federal claim is presented on the face of the well-pleaded complaint. There is no federal claim presented if the plaintiff properly pleads only a state law cause of action. And the possibility that a plaintiff could have asserted a federal claim does not permit federal question removal. A plaintiff is master of his complaint and may generally allege only a state law cause of action even where a federal remedy is available. Bernhard v. Whitney National Bank, 523 F.3d 546, 551 (5th Cir. 2008).

**Fair Credit Reporting Act**

**A. No FCRA Claim Asserted**

Plaintiff's petition did not expressly invoke the FCRA, and he represents in his motion to remand that he did not bring any claim under the FCRA. He also notes that he requests injunctive and declaratory relief, which would not be available to him under the FCRA.

Carter first responds that Plaintiff's petition specifically requests damages related to credit reporting agencies, credit reporting, and alleged damage to his credit. Carter states that such claims may be asserted under the FCRA, Louisiana has no comparable state law, and Plaintiff has not specified that he seeks only a state law remedy.

Carter seeks to distinguish this action from the facts in Bernhard, in which bank customers filed suit in state court for claims based on unauthorized transfers from their checking account, and they prayed for damages and attorney's fees. The defendants removed the case based on asserted federal question jurisdiction. They argued that the

facts alleged presented alleged violations of the EFTA and its implementing regulations, and they pointed to the claim for attorney's fees that were available under the EFTA but not under state law.

The district court in <u>Bernhard</u> found that there was jurisdiction, but the Fifth Circuit reversed. With respect to the claim for attorney's fees, the court noted its decision in <u>In re Hot-Head, Inc.</u>, 477 F.3d 320, 324 (5th Cir. 2007) that held a boilerplate request for attorney's fees, even if the fees are not authorized under state law, does not confer subject matter jurisdiction on the federal courts. <u>Bernhard</u>, 523 F.3d at 551-52.

Carter argues that this case is different because the plaintiffs in <u>Bernhard</u> brought claims under Louisiana Civil Code articles 2315 and 2316, but Plaintiff has not specified any applicable Louisiana law in his petition. Plaintiff may not have cited a particular code article, but paragraph 15 of the petition invokes several familiar state law claims such as breach of contract, negligence, and conversion. The undersigned finds that those clearly invoke Louisiana law, there is no invocation of federal law, and the fact that Plaintiff may be praying for some relief available under federal law, but not state law, does not convert his petition into one that asserts a federal claim under the EFTA.

A plaintiff is "master to decide what law he will rely upon," and he may avoid federal jurisdiction by exclusive reliance on state law even though a federal cause of action may be available. <u>Caterpillar, Inc. v. Williams</u>, 107 S.Ct. 2425, 2429 (1987); <u>MSOF Corp. v. Exxon Corp.</u>, 295 F.3d 485, 490 (5th Cir. 2002)(allegations and prayer consistent with CERCLA claim did not support removal when CERCLA not specifically invoked and state law provided a cause of action); <u>Avitts v. Amoco Prod. Co.</u>, 53 F.3d 690, 693 (5th Cir.

1995) ("when both federal and state remedies are available, plaintiff's election to proceed exclusively under state law does not give rise to federal jurisdiction"); Stinson v. Scoggins, 2008 WL 631204, *3 ("federal question jurisdiction is not present merely because a federal law claim, such as 42 U.S.C. § 1983, that was not pleaded by the plaintiff may be available to him.") (Hicks, J.). Plaintiff asserted cognizable state law claims regarding the handling of his checking account. It may be that his claim for damages related to credit reporting matters will fail under state law, but that does mean that the invalid request converts his claim to one based on federal law.

Carter also argues that the court should follow Travis v. Laiche, 2008 WL 11350279 (M.D. La. 2008) (Parker, J.), a decision that was issued soon after Bernhard, acknowledged the Bernhard decision, and still allowed removal of an excessive force claim because the plaintiffs asserted claims for both attorney's fees and punitive damages (neither available under state law) and did not specify any remedy available under state law. The undersigned believes that the approach taken above is correct in this case, where the plaintiff has specifically invoked well-known state law causes of action and has prayed for several remedies that are available under state law. To the extent Travis might support an argument for removal, the undersigned believes that the approach taken in this case is more in line with Bernhard and other controlling decisions.

## B. FCRA and Complete Preemption

Carter next asserts that the FCRA completely preempts any arguably applicable state law in connection with Plaintiff's claims for damages related to credit reporting. Complete preemption entirely substitutes a federal law cause of action for a state one. The

Supreme Court has recognized it in only three areas:  The Labor Management Relations Act, ERISA, and the National Bank Act. <u>Beneficial National Bank v. Anderson</u>, 123 S.Ct. 2058 (2003); <u>Hastings v. Bank of America Corp.</u>, 2013 WL 5530979 (S. D. Tex. 2013). The Fifth Circuit has found that the Carmack Amendment and  Interstate Commerce Commission Termination Act completely preempt certain claims related to interstate shipping.  <u>PCI Transp., Inc. v. Fort Worth & W. R.R. Co</u>., 418 F.3d 535 (5th Cir. 2005); <u>Hoskins v. Bekins Van Lines</u>, 343 F.3d 769 (5th Cir. 2003).  Other examples of complete preemption are rare.

The undersigned addressed a similar argument in <u>Evans v. BAC Home Loan Servicing, LP</u>, 2016 WL 8189266 (W.D. La. 2016).  The undersigned held that there is nothing in the FCRA that is so broad as to completely displace all state law in the arena of consumer credit reporting matters.  This has been recognized in multiple district court decisions that explain that defendants in such cases may have ordinary preemption defenses that they can raise based on the federal statutes, but those statutes do not give rise to complete preemption so as to allow removal to federal court.  <u>See</u>, <u>e.g.</u>,  <u>Palmer v. Nissan Fin</u>., 2019 WL 4060677, *7 (N.D. Tex. 2019) ("Even if the FCRA and FDCPA preempt certain parts of Plaintiff's state law claims, specific preemption, i.e., non-complete preemption, is an affirmative defense that cannot be considered in determining whether federal question jurisdiction exists."); <u>McClung</u>, 2015 WL 5638223 *5 (N. D. NY 2015) ("With respect to the FCRA, courts have generally held that it does not provide a basis for removal of state law claims pursuant to the complete preemption doctrine."); <u>Hamed v. Chase Home Finance, LLC</u>, 2013 WL 5674185 (E. D. La. 2013) ("Complete preemption

requires clear legislative intent that the federal remedy be exclusive, which is lacking with respect to the FCRA."); Hastings v. Bank of America Corp., 2013 WL 5530979, *3 (S. D. Tex. 2013) ("Although the Fifth Circuit appears not to have decided this question, 'many district courts have considered the issue and concluded that complete preemption is lacking.'") (collecting cases); and Holmes v. Experian Information Solutions, Inc., 2011 WL 4542900, *3 (S. D. NY 2011) ("Although ... the FCRA does provide Experian with a defense of preemption in this case, courts have generally found that the FCRA does not provide a basis for removal of state law claims pursuant to the complete preemption doctrine.") (collecting cases).  Defendant have not cited any persuasive authority that has held that the FCRA completely preempts the field to allow removal of otherwise state law claims.

**EFTA**

Carter also argues that the court has jurisdiction because the EFTA and its regulations will apply with regard to disputes involving electronic fund transfers.  Carter does not argue that the EFTA completely preempts this area of law, and Bernhard held that it does not.  The court stated:

> The clear language of the EFTA indicates that Congress did not intend for the Act to provide the exclusive cause of action for claims relating to unauthorized electronic fund transfers.  The Act contemplates the application of state law that is not preempted by its provisions.  It does not *completely* preempt claims relating to electronic fund transfers and does not, therefore, provide federal question jurisdiction in this case.

Bernhard, 523 F.3d at 553 (Emphasis in original).

Carter argues that federal question jurisdiction is nonetheless present because Plaintiff seeks relief of the type afforded by the EFTA and his allegations "arguably state a claim for violation of the EFTA."  As stated above, the plaintiff is the master of his complaint and may rely solely on state law even when federal law is available.  The plaintiff has done so in this case, and the mere fact that he could have chosen to assert a federal claim does not give rise to federal jurisdiction.

**Attorney's Fees**

Plaintiff requests an award of attorney's fees pursuant to the provision that an order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  There is no presumption in favor of awarding fees following a remand, and the use of the term "may" in Section 1447(c) leaves the district court with discretion, with no heavy congressional thumb on either side of the scales. Martin v. Franklin Capital Corporation, 126 S.Ct. 704 (2005).  That discretion is to be guided by the standard that:  "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Id. at 711. "Conversely, when an objectively reasonable basis exists, fees should be denied."  Id.  The district court also retains discretion to consider whether unusual circumstances warrant a departure from that rule in a given case.  Id.; Omega Hosp., LLC v. Louisiana Health Service & Indem. Co., 592 Fed. Appx. 268 (5th Cir. 2014) (reversing award of fees because there was an objectively reasonable, although unsuccessful, basis for removal).

The undersigned recommended in <u>Evans</u> that a motion to remand be granted but a fee request be denied.  Mr. Evans was represented by the same counsel who represents Plaintiff in this case.  Among the factors the court said warranted denial of fees was that the plaintiff could have perhaps avoided removal if his petition had squarely and expressly disavowed the assertion of any federal claim and specifically identified the state laws that supported his claims.  The court noted that leaving ambiguities in that area often spurs similar removals, when more straightforward allegations might avoid them.  The same is true in this case.  The undersigned believes that Carter has no lawful basis to remove the case, but if Plaintiff had added an extra sentence or two in his petition about the legal foundation of his claims it likely would have avoided removal altogether.  Upon consideration of the relevant facts, it is the opinion of the undersigned that the best exercise of the court's discretion is to not award fees in this case.

Accordingly,

It is recommended that Plaintiff's Motion to Remand (Doc. 4) be granted and that this case be remanded to the Shreveport City Court.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b).  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 23rd day of March, 2021.

Mark L. Hornsby
U.S. Magistrate Judge